IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SARAH CERDA,                              )
                                          )
                    Plaintiff,            )  Case No. CV05-491-S-EJL
                                          )
vs.                                       )  MEMORANDUM ORDER
                                          )
SAINT ALPHONSUS REGIONAL                  )
MEDICAL CENTER, et al.,                   )
                                          )
                    Defendants.           )
_____  )

Pending before the Court in the above-entitled matter is Defendants' motion for partial summary judgment and Plaintiff's motion to file second amended complaint. The parties have filed their responsive briefing and the matters are now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument.

**Factual and Procedural Background**

Plaintiff, Sarah Cerda, was employed as a dispatcher and later as an EMT for ground transport with Defendant Saint Alphonsus Regional Medical Center, Inc.'s ("St. Al's") Life Flight Department from November 14, 2001 to June 24, 2005. Ms. Cerda's employment was terminated in June of 2005 when St. Al's initiated a reduction in force ("RIF"). Ms. Cerda applied for various other positions with St. Al's and other employers but was not hired for the positions, she alleges, because her supervisor in the Life Flight Department, Defendant Ken Sheldon, communicated to prospective employers that she had "dependability issues." The alleged "dependability issues" relate to the end of Ms. Cerda's employment when she started missing work shifts due to an illness.

MEMORANDUM ORDER - Page 1

Beginning in February of 2005, Ms. Cerda became seriously ill and was forced to take a leave of absence.  In March of 2005 Ms. Cerda was admitted to St. Al's and applied for personal leave under the Family Medical Leave Act.  Ms. Cerda returned to work on May 5, 2005 until her termination in June of 2005.  Prior to her illness, Ms. Cerda's performance evaluations were positive and reflected no attendance or dependability issues.  (Dkt. No. 52, Ex. A).  After becoming ill Ms. Cerda worked intermittently but was unable to work regular shifts and missed shifts because of her illness.   Immediately prior to her termination, Mr. Sheldon completed a Termination Notice identifying Ms. Cerda's work performance for dependability and quantity of work both in the "developing" range of 1.5 to 1.0 on a scale of 4.0 to 0, with 0 being the lowest.  Ms. Cerda was given an overall score of 2.0 and deemed eligible for rehire "if dependability issue corrected." (Dkt. No. 52, Ex. H).  Ms. Cerda alleges the Termination Notice and Mr. Sheldon's comments to prospective employers regarding her "dependability issues" precluded her ability to find another job in her field.  As a result, Ms. Cerda has initiated this action against the Defendants St. Al's and Mr. Sheldon alleging violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(4)(A), Defamation, Negligent and Intentional Infliction of Emotion Distress, and Breach of the Implied Covenant of Good Faith and Fair Dealing.  Defendants have filed a motion for summary judgment on all claims except Ms. Cerda's FMLA claim.[1]  Ms. Cerda has filed a motion seeking to file a Second Amended Complaint to include punitive damages.

## Standard of Law

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element

---

[1]  Defendants also note that their motion for summary judgment does not apply to the infliction of emotional distress claim to the extent it is based upon the alleged violations of the FMLA.  (Dkt. No. 41, p. 16  n. 4).

MEMORANDUM ORDER - Page 2
07ORDERS\CERDA

which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

---

[2] See also, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**Discussion**

**Motion for Summary Judgment**

I.      Defamation Claim:

When considering Defendants' Motion for Summary Judgment with regard to the pendant state law claims, the Court applies Idaho's substantive law.  Bryant v. Technical Research Co., 654 F.2d 1337, 1343 (9th Cir. 1981).  In Idaho, "in order to prove a claim of defamation, the plaintiff has the burden of proving each of the following elements[:]"

1.   The defendant communicated information concerning the plaintiff to others; and
2.   The information impugned the honesty, integrity, virtue or reputation of the plaintiff or exposed the plaintiff to public hatred, contempt or ridicule; and
3.   The information was false; and
4.   The defendant knew it was false, or reasonably should have known that it was false; and
5.   The plaintiff suffered actual injury because of the defamation; and
6.   The amount of damages suffered by the plaintiff.

Idaho Civil Jury Instruction 4.82.  Defendants' motion for summary judgment alleges dismissal of the defamation claim is proper for three reasons: the alleged defamatory statements were true, the statements were privileged, and the statements were expressions of opinion, not fact, and therefore are not defamatory statements.  Ms. Cerda disputes each of these basis for dismissal.

A.      Statements of Fact or Opinion:

At issue is Mr. Sheldon's statement that Ms. Cerda had "dependability issues."[3]  Because Mr. Sheldon's statement is subject to differing viewpoints the Defendants argue it was an expression of an opinion, not a statement of fact, and, therefore, does not support a claim for defamation.  Ms. Cerda argues that the statement was one of fact because it can be proven to be false.  Alternatively, she contends that even if the statement is deemed an opinion,  it was defamatory because it was not given with the requisite factual support.

Defamation claims involve false factual statements but statements of opinion are protected speech under the First Amendment.  Cochran v. NYP Holdings, Inc. 58 F. Supp.2d 1113,

---

[3]  Defendants initially discussed a statement that Ms. Cerda was "drug seeking" but Ms. Cerda made clear in her response that she is not seeking recovery for defamation based upon any such statements.  As such, the Court will not address these arguments.

MEMORANDUM ORDER - Page 4
07ORDERS\CERDA

1121 (C.D. Cal. 1998) ("Mere comment within the ambit of the First Amendment is not actionable."). In Wiemer v. Rankin, 790 P.2d 347 (Idaho 1990), the Idaho Supreme Court adopted the approach of the Second Circuit in libel cases distinguishing between a statement of fact subject to potential defamation liability or a mere expression of an opinion noting: "An assertion that cannot be proved false cannot be held libellous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be. Liability for libel may attach, however, when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader. If an author represents that he has private, first-hand knowledge which substantiates the opinions he expresses, the expression of opinion becomes as damaging as an assertion of fact." Wiemer, 790 P.2d at 352 (citing Hotchner v. Castillo-Puche, 551 F.2d 910, 913 (2d Cir 1977) (citations omitted). As such, "Opinions based on false facts are actionable only against a defendant who had knowledge of the falsity or probable falsity of the underlying facts." Hotchner, 551 F.2d at 913 (The Second Circuit's language goes to whether the declarant of the statement knew it was false or reasonably should have known it was false.) (citations omitted); see also Dodds v. Am. Broad. Co., 145 F.3d 1053, 1065-68 (9th Cir. 1998) (dismissing action for failure to state a claim because statements were non-actionable opinion as a matter of law).

        The Supreme Court, however, has held that the First Amendment provides sufficient protections for opinions such that courts need not engage in efforts to distinguish between statements of opinion and statements of fact. Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990). Thus, "in reviewing a defamation claim, a court must ask as a threshold matter 'whether a reasonable factfinder could conclude that the contested statements implies an assertion of objective fact." Unelko Corp. v. Rooney, 912 F2d 1049, 1053 (9th Cir. 1990). "If the answer is no, the claim is foreclosed by the First Amendment." Id. "The First Amendment protects 'statements that cannot reasonably [be] interpreted as stating actual facts about an individual.'" Knievel v. ESPN, 393 F.3d 1068, 1074 (2005) (citing Milkovich, 497 U.S. at 20). "Courts have extended First Amendment protection to such statements in recognition of 'the reality that exaggeration and non-literal

commentary have become an integral part of social discourse.'" <u>Knievel</u> at 1074 (citing <u>Livinsky's,</u> <u>Inc. v. WalMart Stores, Inc.</u>, 127 F.3d 122 128 (1st Cir. 1997)).

The Ninth Circuit adopted a three part test for First Amendment analysis: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." <u>Id.</u>; <u>see also Partington v. Bugliosi</u>, 56 F3d 1147, 1153 (9th Cir. 1995). The totality of the circumstances in which the statement was made must be examined. <u>Underwager v. Channel 9</u> <u>Australia</u>, 69 F.3d 361, 366 (9th Cir. 1995). The Court must "examine the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude the statements imply a false assertion of an objective fact and therefore fall outside of the protection of the First Amendment." <u>Partington v. Bugliosi</u>, 56 F.3d 1147 (9th Cir. 1995). The Court must interpret the statement "from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made." <u>Norse v. Henry Holt & Co.</u>, 991 F.2d 563, 567 (9th Cir. 1993).

The allegedly defamatory statements in this case involve Mr. Sheldon's characterization of Ms. Cerda as having "dependability issues." The statements were allegedly made to other employers within her field of work, recruiters of other positions within St. Al's, and on the Termination Notice. At his deposition Mr. Sheldon testified that when responding to inquiries from hiring managers regarding Ms. Cerda's "dependability issues" he would tell "them that Sarah was a good employee, but for our closed unit, that the absences related to her illness were difficult for us to manage, hence the dependability issue. When I filled out the termination notice, I filled that termination notice out from my point of view, not from someone else's point of view."[4] (Dkt. No. 41, Ex. B, p. 192).

The Court finds that Mr. Sheldon's statements regarding Ms. Cerda's "dependability issues" are statements of fact for purposes of the defamation claim. While Mr. Sheldon's statements

---

[4] Due to the nature of the Life Flight Department it is a "closed unit" which requires that only qualified EMT's could work in the unit which limited the number of individuals available to cover shifts in the Life Flight Department.

MEMORANDUM ORDER - Page 6
07ORDERS\CERDA

are undoubtedly his own opinions, they are also factual assertions regarding Ms. Cerda's employment with the Life Flight Department. Characterizing Ms. Cerda as having "dependability issues" draws into question her reliability as an employee. Whether she properly gave notice before missing a shift and what she was told regarding her work schedule are factual disputes that the jury must resolve in order to ascertain the truth or falsity of Mr. Sheldon's statement. The factfinder could find that the statement implies a false assertion of an objective fact if the facts are as Ms. Cerda has alleged in the complaint; that she gave notice of her missed shifts and that she was told by her employer that they were able to cover her shifts. Accordingly, the Court finds that the First Amendment does not foreclose the defamation claim.

   B.  <u>False Statements</u>:

  Defendants ague that Ms. Sheldon's statement was truthful because it was based on the fact that during the last several months of her employment Ms. Cerda had a significant number of absences at work and she failed to provide adequate advanced notice of when she would be absent which caused staffing problems in the Life Flight Department. As a result, the Defendants argue, Mr. Sheldon was unable to depend upon Ms. Cerda to work her shift. In response, Ms. Cerda points to her attendance and competency assessments completed prior to her illness which reflect that she was meeting all attendance and punctuality requirements. After becoming ill, she was unable to work regular shifts but she argues that she informed Mr. Sheldon or fellow co-workers when she would need to miss work because of her illness. In addition, Ms. Cerda states that Mr. Sheldon and co-workers were aware that she would not be working regular shifts because they had donated personal leave time to her, she was told that her shifts were covered, and based on the fact that shifts were covered for another employee who had previously undergone surgery.

  The parties agree that truth is a complete defense to a claim of defamation. (Dkt. Nos. 41, p. 6 and 51, p. 3). "It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance. In Idaho, the Court has adopted this rule and added that so long as the substance, the gist, the sting of the allegedly libelous charge be justified, minor inaccuracies do not amount to falsity." <u>Steele v. Spokesman-Review</u>, 61 P.3d 606, 610 (Idaho 2002) (citations and quotations omitted).

MEMORANDUM ORDER - Page 7
07ORDERS\CERDA

Though Ms. Cerda's missed shifts undoubtedly caused scheduling problems for the Life Flight Department, whether or not Mr. Sheldon's statement regarding her "dependability issues" is true or false is subject to debate. The fact that Ms. Cerda missed work in the last few months of her employment due to her illness is not disputed. However, the parties quarrel over whether Ms. Cerda provided advanced notice when she did miss a shift so as to allow the Life Flight Department to cover. Whether she did or did not give notice and was or was not dependable, is a disputed fact that the jury must determine after weighing the evidence at trial. Likewise, the Defendants' arguments that Mr. Sheldon's concerns regarding Ms. Cerda's dependability were legitimate based on his concerns regarding her drug use is disputed and a question for the jury.

C.        Privileged Statements:

It is undisputed that in Idaho "there exists a conditional or qualified privilege which protects the publisher of defamatory material from liability if the publication is made to one who shares a common interest, as for example, a business relationship." Barlow v. International Harvest Co., 522 P.2d 1102, 1112-13 (Idaho 1974) (citations omitted). "However, this and other qualified privileges may be lost through abuse. One form of such abuse is the publication of the defamatory material with express malice. Express malice, or malice in fact, is the publication of defamatory matter in bad faith, without belief in the truth of the matter published, or with reckless disregard of the truth or falsity of the matter." Id. at 1113 (citations omitted).

"The determination of whether a given set of facts constitutes a 'privileged occasion,' in regard to liability for defamation, is a matter of law for the determination of the court." Id. (citations omitted). "On the other hand, the question of whether the publication was actuated by express malice, and the privilege thereby nullified, is a question for the jury. The court may take the question of malice from the jury only if there is no evidence of malice and the undisputed facts admit only one conclusion." Id. (citations omitted).

Ms. Cerda cedes that the common interest privilege is applicable in this case but argues that there is a genuine issue of material fact as to whether the Defendants acted with malice thereby waiving the privilege. Defendants argue there is no evidence of malice and, therefore, the privilege precludes Ms. Cerda's defamation claim. Having reviewed the parties' submissions and the record

MEMORANDUM ORDER - Page 8
07ORDERS\CERDA

herein the Court finds a genuine issue of material fact exists as to whether the Defendants acted with malice.  Just as the Court concluded above regarding whether Mr. Sheldon's statement is true or false, so too here if the facts are as Ms. Cerda has alleged, a jury could find that Mr. Sheldon's characterization of Ms. Cerda as an unreliable employee to prospective employers was done with malice.  When speaking with potential employers, Mr. Sheldon's alleged omission or lack of sufficient information as to Ms. Cerda's employment positive employment record with St. Al's and the facts surrounding her illness which caused the work related problems could be deemed by the jury to have been done with malice depending on how the facts are viewed by the jury at the time of trial.  Though Mr. Sheldon may not have been required to provide every detail of Ms. Cerda's employment history and the circumstances of her illness, as a manager himself, he is likely aware of the importance of hiring reliable and dependable employees and the impact his statement would have on Ms. Cerda's job search.  The allegation that Defendants assured Ms. Cerda that her shifts were covered could go to prove that Mr. Sheldon knew Ms. Cerda believed she was behaving appropriately during her employment and that his later characterization of her as having dependability issues was inaccurate and possibly malicious.  At the very least, the Court concludes that the Defendants have not shown that there exists no evidence of malice and that the undisputed facts can only yield one conclusion in their favor.  While the burden to prove actual malice will be upon Ms. Cerda at trial, it is the Defendants who must overcome the standard on this motion.  Accordingly, the Court denies summary judgment as to the defamation claim.

II.        Infliction of Emotional Distress:

Defendants argue Ms. Cerda's claim for emotional distress arises out of facts alleged in support of her FMLA claim which cannot support her claim for damages for emotional distress because damages available under the FMLA are only those special damages set forth in the statue.  The FMLA does not provide for recovery of punitive damages.  Ms. Cerda counters that her claim arises from the defamation claim and that Mr. Sheldon's actions "punishing" Ms. Cerda for taking FMLA leave were outrageous and extreme.  As a result, Ms. Cerda claims she suffered sever emotional distress including stress, headaches, illness, and nausea.  Defendants dispute whether her alleged damages were caused by the alleged emotional distress.

MEMORANDUM ORDER - Page 9
07ORDERS\CERDA

A.        <u>Intentional Infliction of Emotional Distress</u>:

"Under Idaho law, a claim for intentional infliction of emotional distress has four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." <u>Nation v. State, Dept. Of Correction</u>, 158 P.3d 953, 968 (Idaho 2007) (citations and quotations omitted); <u>see also</u> <u>Brown v. Matthews Mortuary, Inc.</u>, 801 P.2d 37, 41 (Idaho1990) ("In order to recover for the intentional infliction of emotional distress the plaintiff must prove that the defendant's conduct was extreme and outrageous which either intentionally or recklessly causes severe emotional distress."). "Although a plaintiff may in fact have suffered extreme emotional distress ... no damages are awarded in the absence of extreme and outrageous conduct by a defendant." <u>Edmondson v. Shearer Lumber Prods.</u>, 75 P.3d 733, 740 (Idaho 2003) (citation omitted). "Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." <u>Id.</u> at 741. "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of atrocious and beyond all possible bounds of decency that would cause an average member of the community to believe it was outrageous." <u>Id.</u> (citation and quotation omitted). Thus, to survive a motion for summary judgment, Ms. Cerda must offer "evidence that can create a reasonable inference of the extreme intentional or reckless conduct required to establish a viable claim for intentional infliction of emotional distress." <u>Brown</u> at 42.

Even assuming all of the factual allegations are true, the Complaint fails as a matter of law in bringing the Defendants' actions under the Idaho definition of extreme and outrageous conduct. <u>Brown</u> at 41-42 (defining standard for intentional infliction of emotional distress and collecting cases pertinent thereto). The Termination Notice, Mr. Sheldon's comments to prospective employers, and the Defendants' other actions in relation to Ms. Cerda's employment do not rise to the level of extreme conduct such that a reasonable member of the community would deem it outrageous or beyond all possible bounds of decency. Accordingly the motion for summary judgment is granted as to the claim for intentional infliction of emotional distress.

B.        Negligent Infliction of Emotional Distress:

Ms. Cerda also alleges there exist genuine issues of material fact as to whether Mr. Sheldon's actions were wrongful and/or negligent in ignoring her rights under the FMLA and deliberately punishing her for taking FMLA leave thereby causing her emotional distress. Defendants maintain that the claim fails because it is based upon alleged violations of the FMLA.

The standard *prima facie* case for negligence tort requires a plaintiff to prove the existence of a legally recognizable duty to conform to a certain standard of conduct, breach of that duty, causation, and damages.  See Coghlan v. Beta Theta Phi Fraternity, 987 P.2d 300, 311 (Idaho 1999) (citations omitted).  Thus, a claim for negligent infliction of emotional distress requires breach of an independent legal duty.  See Nation v. State, Dept. Of Correction, 158 P.3d 953, 967 (Idaho 2007) (citation omitted).  "Every person has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others."  Id. (citations and quotations omitted).  Whether a duty exists depends on several factors:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

Id. (quoting Turpen v. Granieri, 985 P.2d 669, 672 (Idaho 1999)) (citations omitted).  The duty of care may differ based on a person's status or special relationship to another or as defined in statutes, regulations, or case law.  Turpen, 985 P.2d at 674.

Here, Ms. Cerda argues that as a supervisor Mr. Sheldon had "a duty to abide by the policies and procedures of the hospital, which include compliance with the requirements of the FMLA" and that he "breached that duty by punishing Plaintiff for her FMLA protected absences," failing to provide complete information regarding her absences, and by failing to conduct a reasonable evaluation of her employment.  (Dkt. No. 51, p. 19).  Ms. Cerda has not cited, nor has the Court's research revealed, any authority supporting the existence of such a duty.  Accordingly, the motion for summary judgment on this claim is granted.

III.        Breach of the Implied Covenant of Good Faith:

Count Four of the complaint asserts a claim for breach of the implied covenant of good faith and fair dealing within her employment contract with St. Al's.  Specifically, Ms. Cerda argues that she was denied the "priority placement" that was promised to the employees subject to the RIF. Defendants counter that the priority placement was not a guarantee of another job with St. Al's but simply a policy whereby employees were given reemployment consideration for open positions for which they qualified for a twelve month period.   This policy, Defendants argue, is not a contractually binding agreement subject to the implied covenant of good faith and fair dealing and that Ms. Cerda's employment contract with St. Al's promised no such benefit.  Ms. Cerda couches the issue differently arguing she was penalized for taking FMLA leave which, under St. Al's policy, should not have been considered in determining whether an employee complied with the attendance policy.[5]  Pointing to three positions in particular, Ms. Cerda alleges she was denied consideration because of Mr. Sheldon's statement regarding her dependability issues which, she argues, caused the hiring official to not consider her for the positions for which she was otherwise qualified.  Ms. Cerda maintains that had the circumstances surrounding her absences been properly explained she would have been considered for and hired in one of these positions.

Idaho adopted a covenant of good faith and fair dealing in  employment contracts: "[A]ny action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant of good faith and fair dealing which we adopt today."  Metcalf v. Intermountain Gas Co., 778 P.2d 744, 750 (Idaho 1989) (citations omitted); see also Jenkins v. Boise Cascade Corp., 108 P.3d 380, 390 (Idaho 2005).  "The implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into."  Metcalf, 778 P.2d 749.  "However, the covenant 'does not create a duty for the employer to terminate the at-will employee only for good cause.'  The covenant simply requires that the parties perform in good faith the obligations imposed by their agreement."  Jenkins, 233 P.3d at 390 ("the covenant is an objective

---

[5]"whether [St. Al's] engaged in conduct which violated, nullified, or significantly impaired Plaintiff's right under [St. Al's] policies not to be discriminated against with regards to her FMLA leave and/or which violated, nullified, or significantly impaired her ability to obtain the benefit of the priority placement policy."  (Dkt. No. 51, p. 10).

determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions.") (citations omitted).

Whether Defendants breached the implied covenant by denying Ms. Cerda priority consideration following the RIF fails as a matter of law.  The priority consideration policy is not a binding contract or term of a contract providing the benefit alleged by Ms. Cerda.  Nor does Ms. Cerda's employment contract with St. Al's provide for any such benefit.  Thus, there has been no denial of any benefit promised to Ms. Cerda.  Accordingly the Defendants' motion for summary judgment on the breach of the implied covenant of good faith and fair dealing is granted.

**Motion to Amend/Correct Complaint**

Ms. Cerda has filed a motion for leave to file a second amended complaint to include a claim for punitive damages pursuant to Idaho Code § 6-1604.  The motion points to the implied covenant of good faith and fair dealing claim as the claim upon which Ms. Cerda seeks to recover punitive damages.  Defendants oppose the motion arguing Ms. Cerda has failed to demonstrate a reasonable likelihood of success of proving facts to support a punitive damages award.  Because the FMLA does not allow for recovery of punitive damages, Defendants argue Ms. Cerda cannot base her claim for punitive damages upon alleged violations of the FMLA.  Defendants also contend that their motion for summary judgment should be granted as to the implied covenant claim.  Ms. Cerda denies that her punitive damages claim is made under the FMLA.

Federal Rule of Civil Procedure 15(a) provides that after responsive pleading has been filed, a party may amend their pleading only by leave of the court or written consent of the adverse party.  Such leave "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile.  Additionally, the district court may consider the factor of undue delay."  Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999) (citation omitted).

MEMORANDUM ORDER - Page 13
07ORDERS\CERDA

Because the Court has ruled above that the Defendants' motion for summary judgment should be granted as to the breach of implied covenant of good faith and fair dealing, the motion to amend is moot.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS as follows:

1)   Defendant's Partial Motion for Summary Judgment (Dkt. No. 41) is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted as to the Plaintiff's Infliction of Emotional Distress claim (Count Three) and Breach of the Implied Covenant claim (Count Four).  The motion is denied in all other respects.

2)   Plaintiff's Motion to File Second Amended Complaint (Dkt. No. 42) is **MOOT**.

3)   The parties are directed to confer and jointly submit a trial date on or before August 31, 2007, from the following dates:

Tuesday, March 11, 2008
Tuesday, April 1, 2008
Tuesday, April 22, 2008
Tuesday, April 29, 2008

DATED:  **August 17, 2007**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - Page 14
07ORDERS\CERDA